UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NEVADA PARTNERS, INC., | Case No. 2:19-CV-767 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| WORKFORCE CONNECTIONS, et al., | |
| Defendant(s). | |

Presently before the court is plaintiff Nevada Partners, Inc.'s ("Nevada Partners") motion for temporary restraining order. (ECF No. 24).

Also before the court is Nevada Partners' motion for preliminary injunction. (ECF No. 25). Defendants Workforce Connections and Jaime Cruz filed a response (ECF No. 30), to which Nevada Partners replied (ECF No. 31).

**I.  Facts**

This action arises from a dispute regarding Workforce Connections' award of federal grants in the amount of $10,000,000 to ResCare Workforce Services ("ResCare"), which is an organization that matches job applicants with employers. (ECF Nos. 1, 24-9).

Workforce Connections is Southern Nevada's local workforce development board. (ECF No. 24). Among its various duties, Workforce Connections distributes federal grants for the improvement of employment services pursuant to the Workforce Innovation and Opportunity Act ("WIOA"), 29 U.S.C. § 3102 et seq. *Id.* Local boards award WIOA grants on a competitive basis, in which the applicants with the best performance are more likely to receive funds. *See* (ECF Nos. 24, 30); 29 U.S.C. § 1322(d)(10)(B)(i); NRS 232.935(4)(d)(1).

**James C. Mahan**
**U.S. District Judge**

From 2015 to 2019, Workforce Connections distributed over $13,000,000 to Nevada Partners. (ECF No. 24-1). Nevada Partners used those funds to assist thousands of residents with job readiness services and provide federal tax return assistance. *Id*. Workforce Connections also awarded ResCare millions of dollars in grants during this time period. (ECF No. 24-9).[1] The record before the court does not indicate to the total amount of those grants.

In 2018, Workforce Connections began a new round of requests for proposals to fund WIOA programs from July 2019 to June 2022. (ECF Nos. 24, 30). The new application process had two substantial changes: (1) past performance evaluations were moved from the initial technical review stage to the ad hoc selection panel's ranking of programs and (2) the precondition that grantees cover their rent costs was replaced with a "cash match" requirement. (ECF Nos. 24-13, 30, 30-1, 30-2, 30-3). The "cash match" provision required applicants to match two percent of their requested grant amount in cash resources. (ECF Nos. 24-13, 24-45).

On March 13, 2019, Workforce Connections convened a meeting in which it planned to award $10,000,000 to ResCare and no WIOA funding to Nevada Partners, consistent with the ad hoc selection panel's recommendation. (ECF Nos. 24-21, 24-27). Various individuals at the meeting raised concerns regarding Workforce Connections' plan. (ECF No. 24-27). The primary points of contention were that the programs committee relied on inaccurate materials and that ResCare allegedly performed worse than other applicants that the ad hoc selection panel did not recommend for funding. (ECF Nos. 24-22, 24-27). In response, Workforce Connections continued the meeting to May 9, 2019. (ECF No. 24-27).

On the same day that Workforce Connections reconvened, Governor Steve Sisolak sent a letter to the board stating that the executive director of the Governor's Office of Workforce Innovation found that the new grant distribution process "does not appear to violate any rules, policies, or laws." (ECF No. 24-25). The governor also expressed concern that awarding "the bulk of the available funds to one entity may have created a perception of favoritism . . ." *Id*. At

---

[1] The parties represent that during this time period ResCare operated out of Workforce Connections' facilities rent-free. (ECF Nos. 24, 30, 31).

James C. Mahan
U.S. District Judge

the meeting, Workforce Connections considered the letter and awarded $10,000,000 to ResCare. (ECF No. 24-30). The WIOA grants begin disbursing on July 1, 2019. (ECF No. 24-22).

On May 3, 2019, Nevada Partners initiated this action, asserting eight causes of action: (1) violation of procedural due process; (2) violation of substantive due process; (3) violation of equal protection; (4) violation of Nevada's open meeting law, NRS 241.020; (5) violation of WIOA's competitive process requirement, 29 U.S.C. § 3122 *et seq.*; (6) violation of WIOA's performance accountability measures requirement, 29 U.S.C. § 3141 *et seq.*; (7) violation of WIOA's conflict of interest provision, 29 U.S.C. § 3122(h) *et seq.*; and (8) injunctive relief. (ECF No. 1).

Now, Nevada Partners has filed a motion for preliminary injunction requesting that the court enjoin the disbursement of $10,000,000 in WIOA grants to ResCare and require Workforce Connections to continue disbursing funds consistent with its 2015–2019 grant allocation scheme until the resolution of this litigation. (ECF No. 25).

## II. Legal Standard

Federal Rule of Civil Procedure 65 provides that the court may issue a preliminary injunction on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). A preliminary injunction seeks to preserve the status quo and prevent irreparable harm from occurring before a judgment is issued. *Textile Unlimited Inc. v. BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001).

The Supreme Court held that courts must consider the following elements in determining whether to issue a preliminary injunction: (1) likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive, meaning the party seeking the injunction must satisfy each element.

Additionally, post-*Winter*, the Ninth Circuit has maintained its serious question and sliding scale tests. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*

"Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**III. Discussion**

Litigants seeking a preliminary injunction have a burden to satisfy the four elements above. *See Winter*, 555 U.S. at 20. The court will address each element to determine whether Nevada Partners' request for a preliminary injunction has merit.

*A. Likelihood of success on the merits*

Nevada Partners argues in its motion that it is likely to succeed on its first, second, third, fifth, sixth, and seventh causes of action. (ECF No. 25). The court disagrees.

*i. Procedural due process*

To prevail on a procedural due process claim, a plaintiff must show "(1) a liberty or property interest protected by the constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

The Due Process Clause of the Fourteenth Amendment protects government benefits only if a plaintiff has a "legitimate claim of entitlement" based on "existing rules or understandings that stem from an independent source such as state law . . ." *Bd. Of regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

Government officials used discretion when allocating the $10,000,000 in WIOA grants by using a competitive process to evaluate applicants. *See* (ECF No. 24-13, 24-27); *see also* 29 U.S.C. § 3122(d)(10)(B)(i). This process began with Workforce Connections' announcement of a new request for proposals followed by a bidder's conference where Workforce Connections answered questions from applicants. (ECF No. 24-46). All proposals that applicants eventually submitted were screened at an initial technical review. *Id.* Then, a third party evaluated and

ranked the proposals. *Id*. Workforce Connections used information from the technical review and third-party evaluation to recommend grant awards, which the programs committee and board approved. *Id*.

The steps in Workforce Connections' competitive process required a global analysis of proposals to determine which applicant is best suited for WIOA grants. These circumstances precluded any "reasonable expectation of entitlement" because the request for proposals process was not based on statutes or rules "couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994) (quotes and citations omitted); *see* 29 U.S.C. §§ § 3122(d)(10)(B)(i), 3123(16). Thus, as is the case with most applicants for government contracts, Nevada Partners does not have a constitutionally protected property interest in the WIOA grants.[2] *See Hi-Tech Rockfall Const., Inc. v. County of Maui*, No CV 08-00081 DAE-LEK, 2009 WL 529096, at *15 (D. Haw. Feb. 26, 2009) (holding that a disappointed bidder to a government contract does not have a protected property interest in the contract).

### ii. Substantive due process

Although the analysis of a procedural due process claim differs from the analysis of a substantive due process claim, both causes of action require plaintiff to show a liberty or property interest that the Fourteenth Amendment protects. *Oceanside Gold Institute, Inc. v. City of Oceanside*, 876 F.2d 897 (9th Cir. 1989). Because Nevada Partners does not have a protected property interest in the WIOA grants set to disburse on July 1, 2019, the substantive due process claim is also unlikely to succeed on the merits.

### iii. Equal protection

In resolving Nevada Partners' equal protection claim, the court must first determine the applicable level of scrutiny. *Aleman v. Glickman*, 217 F.3d 1191, 1195 (9th Cir. 2000). According to the allegations in the complaint, Workforce Connections did not engage in class-based discrimination. (ECF No. 1). Instead, it singled out Nevada Partners for disfavored

---

[2] The court recognizes that Workforce Connections has previously awarded Nevada Partners millions of dollars in WIOA grants. However, the "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate clam of entitlement. *Doran v. Houle*, 721 F.2d 1182, 1186 (9th Cir. 1983).

treatment relative to similarly situated applicants. *Id*. Thus, Nevada Partners is asserting a "class of one" claim, and rational basis applies. *See Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1022 (2011).

For Nevada Partners to prevail on its "class of one" claim, it must show that Workforce Connections "(1) intentionally (2) treated plaintiff differently than other similarly situated [grant applicants], (3) without rational basis." *Gerhart*, 637 F.3d at 1022 (citing *Willowbrook*, 528 U.S. at 564). "[T]he rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government action." *Id*. at 1023 (citing *SeaRiver Maritime Financial Holdings Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002).

Nevada Partners primarily contends that Workforce Connections violated the Equal Protection Clause because Workforce Connections did not have a rational basis to alter the past performance evaluation factor and institute a "cash match" requirement. (ECF Nos. 24, 31). However, these arguments pertain to Workforce Connections' underlying actions rather than the basis that Workforce Connections allegedly singled out Nevada Partners for disfavored treatment. *See id*. Nevada Partners' "class of one" claim cannot succeed on these grounds.

### *iv. WIOA's competitive process requirement*

WIOA requires local boards to award grants on a competitive basis. 29 U.S.C. § 3122(d)(10)(B)(i). In furtherance of this requirement, Workforce Connections developed a four-year plan that established the procedure it would follow in distributing grants. *See* (ECF No. 24-46). The plan also stated that Workforce Connections would follow the procedure "in a manner that provides, to the maximum extent practical, free and open competition to all interested parties." *Id*.

Nevada Partners argues that Workforce Connections mismanaged its grant distribution procedure by altering past performance evaluations and adding the "cash match" requirement. (ECF Nos. 24, 31). Although these changes were substantial, nothing in the record indicates that they harmed free and open competition. Workforce Connections simply integrated past performance evaluations into the ad hoc selection panel's ranking of programs. (ECF Nos. 30-1, 30-2, 30-3). And the "cash match" requirement was a replacement for the precondition that all

James C. Mahan
U.S. District Judge

- 6 -

applicants cover their rent costs so that organizations that do not pay rent, such as ResCare, would not have an unfair advantage. (ECF Nos. 24-45, 30). Accordingly, Nevada Partners has not shown a likelihood of success or any meritorious question pertaining to Workforce Connections' alleged violation of § 3122(d)(10)(B)(i).

*v. WIOA's performance accountability measures requirement*

WIOA establishes performance accountability measures that local boards use to assess the effectiveness of an applicant's program. 29 U.S.C. § 3141(a). The relevant provisions of the statute list several indicators of performance which focus on participants' unsubsidized employment, education, and earnings after leaving a program. 29 U.S.C. § 3141(b)(2).

Nevada Partners contends that Workforce Connections violated the performance accountability measures requirement by removing past performance evaluations from the request for proposals process. (ECF No. 24). As the court explained in the previous section, Workforce Connections did not forego past performance evaluations. Instead, it moved the evaluations from the initial technical review to the ad hoc selection panel's process for scoring and ranking programs. (ECF Nos. 30-1, 30-2, 30-3). Thus, Nevada Partners' sixth cause of action lacks merit.

*vi. WIOA's conflict of interest provision*

WIOA' conflict of interest provision provides that a member of a local board or standing committee cannot:

(1) vote on a matter under consideration by the local board—

    (A) regarding the provision of services by such member (or by an entity that such member represents); or

    (B) that would provide direct financial benefit to such member or the immediate family of such member; or

(2) engage in any other activity determined by the Governor to constitute a conflict of interest as specified in the State plan.

29 U.S.C. § 3122(h).

Nevada Partners argues that several individuals from Workforce Connections had conflicts of interest and did not abstain from participating in the request for proposals process. (ECF No. 24). These individuals include John Martin, Peter Guzman, Louis Loupia, Lou

DeSalvio, and Marvin Gebers. *Id*. The record before the court indicates that Martin, who participated in the grant distribution process, oversees Clark County Juvenile Justice Services ("CCJJS"). (ECF No. 24-33). Martin's mere affiliation with CCJJS does not create a conflict of interest because CCJJS is the end/non-direct recipient of benefits, independent of which program confers those benefits with WIOA grants. *See* (ECF No. 30).

The remaining individuals also participated in various capacities with Workforce Connections' grant distribution process. (ECF No. 24-33). They also participated in organizations that deal with labor unions. *Id*. Like CCJJS, labor unions were not competing for WIOA grants. *See* (ECF No. 30). They are organizations that indirectly benefit from Workforce Connections' distribution of grants by receiving referrals from programs providing workforce services. *See id*. The attenuated relationship between labor unions and Workforce Connections alone is not enough to create conflicts of interest.

In sum, Nevada Partners has not provided substantive evidence indicating concrete conflicts of interest. Therefore, Nevada Partners is unlikely to prevail on this cause of action.

*B. Likelihood of irreparable injury*

Before a preliminary injunction may issue, the seeking party must show that he or she will suffer an irreparable injury and otherwise lacks an adequate remedy at law. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The mere "possibility" of irreparable harm is not enough to justify a preliminary injunction. *Winter*, 555 U.S. at 22. Rather, the seeking party must establish that irreparable harm is likely and immediate. *Alliance for the Wild Rockies*, 632 F.3d at 1131 (citing *Winter*, 555 U.S. at 22); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Nevada Partners' requested relief is two-fold. First, it requests that the court enjoin WIOA grants in the amount of $10,000,000. (ECF No. 25). Second, it requests that the court issue a mandatory injunction requiring Workforce Connections to distribute funds to Nevada Partners consistent with its 2015–2019 disbursement scheme. *Id*.

Absent an injunction, Nevada Partners may lose millions of dollars in federal funds. *See id*. This economic injury cannot support a preliminary injunction because a future award of

damages would be an adequate legal remedy. *See Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991); *see also Ali v. United States*, 932 F. Supp. 1206, 1210 (N.D. Cal. 1996) (holding that being unable to bid for government contracts is an economic injury).

With regards to the second prong of the proposed injunction, the court understands that WIOA grants are essential to the services that Nevada Partners provides. *See* (ECF No. 25). However, courts issue mandatory injunctions only if the facts and law clearly favor the moving party. *Stanley v. University of Southern California*, 13 F.3d 1313, 1319–20 (9th Cir. 1994). Nevada Partners has not shown a likelihood of success on the merits or any serious questions going to the merits of this action. Therefore, any economic hardship that might result cannot sway this factor in favor of a preliminary injunction.

Nevada Partners also contends that without an injunction it will suffer deprivation of a constitutional right. (ECF No. 25). This alleged harm is theoretical as it requires the court to assume that there has been a constitutional violation. Without a likelihood of success on Nevada Partners' due process and equal protection claims, irreparable harm is unlikely. *See Feldman v. Arizona Secretary of State's Office*, 843 F.3d 366, 394 (9th Cir. 2016) ("Because it is not likely [plaintiff] will suffer a violation of her statutory or constitutional rights, she likely has failed to establish that irreparable harm will flow from a failure to preliminarily enjoin defendants' actions.").

*C. Balance of hardships and public interest*

Both Nevada Partners and ResCare rely on WIOA grants to provide workforce services. Although issuing an injunction would allow Nevada Partners' to continue providing services, it would also proportionately decrease ResCare's operations. Thus, the balance of hardships does not weigh in favor of an injunction. Nevada Partners has also failed to show that the public interest is in its favor because an injunction would have virtually no effect on the ultimate recipients of WIOA benefits.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

**IV. Conclusion**

Nevada Partners has not made a "clear showing" that it is entitled to a preliminary injunction. The court will exercise its "equitable discretion" and deny the instant motion. *Winter*, 555 U.S. at 22, 32; *see also See Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am.*, 896 F.2d at 1285 (11th Cir. 1990) ("preliminary injunctions of legislative enactments—because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly").

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Nevada Partners' motion for preliminary injunction (ECF No. 25) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Nevada Partners' motion for temporary restraining order (ECF No. 24) be, and the same hereby is, DENIED as moot.

DATED June 18, 2019.

_____
UNITED STATES DISTRICT JUDGE