UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NEVADA PARTNERS, INC.,

    Plaintiff(s),

v.

WORKFORCE CONNECTIONS, et al.,

    Defendant(s).

Case No. 2:19-CV-767 JCM (CWH)

ORDER

Presently before the court is defendants Jaime Cruz and Workforce Connections' (collectively "defendants") motion to dismiss. (ECF No. 28). Plaintiff Nevada Partners, Inc. ("Nevada Partners") filed a response (ECF No. 32), to which defendants replied (ECF No. 34).

**I.    Facts**

This action arises from a dispute regarding Workforce Connections' award of federal grants in the amount of $10,000,000 to ResCare Workforce Services ("ResCare"), which is an organization that matches job applicants with employers. (ECF No. 1). The complaint contains the following allegations:

Workforce Connections is Southern Nevada's local workforce development board. *Id*. Among its various duties, Workforce Connections distributes federal grants for the improvement of employment services pursuant to the Workforce Innovation and Opportunity Act ("WIOA"), 29 U.S.C. § 3102 *et seq*. *Id*. Local boards award WIOA grants on a competitive basis, in which the applicants with the best performance are more likely to receive funds. 29 U.S.C. § 1322(d)(10)(B)(i); NRS 232.935(4)(d)(1); *Id*.

From 2015 to 2018, Workforce Connections distributed over $9,000,000 to Nevada Partners. (ECF No. 1). Nevada Partners used those funds to assist thousands of residents with

**James C. Mahan**
**U.S. District Judge**

job readiness services and provide federal tax return assistance. *Id*. Workforce Connections also awarded ResCare millions of dollars in grants during this time period. *Id*. On July 1, 2015, Workforce Connections also designated ResCare to operate the One-Stop Center in its building. *Id*. One-Stop Center operators coordinate workforce services that organizations like Nevada Partners provide. *Id*. On March 21, 2017, ResCare ceased to serve as the One-Stop Center operator but remained in Workforce Connections' building. *Id*.

In 2018, Workforce Connections began a new request for proposals process to fund WIOA programs from July 2019 to June 2022. *Id*. The new application process had two substantial changes: (1) past performance evaluations were no longer a part of the initial technical review stage and (2) grant applicants had to comply with a "cash match" requirement to receive WIOA funds. *Id*.

The "cash match" provision required applicants to match two percent of their requested grant amount in cash resources. *Id*. The new "cash match" requirement did not displace the "in-kind match" requirement that Workforce Connections required in prior request for proposals processes. *Id*. The "in-kind match" provision required applicants to match three percent of their requested grant amount but did not require applicants to commit those matching funds to the relevant grant project. *Id*.

In early 2019, Workforce Connections required Nevada Partners to undergo an on-site monitoring review during the days before, and immediately up to, the deadline to submit grant applications. *Id*. The monitoring process involved a review of all fiscal and administrative documents. *Id*. Nevada Partners also kept its staff and directors available on site to answer all questions, collect documents, and participate in meetings. *Id*. Workforce Connections did not conduct other on-site monitoring reviews for any other grant applicants in the days before the submission deadline. *Id*.

On March 13, 2019, Workforce Connections convened a programs committee meeting in which it planned to award $10,000,000 to ResCare and no WIOA funding to Nevada Partners, consistent with the ad hoc selection panel's recommendation. *Id*. Various individuals at the meeting raised concerns regarding Workforce Connections' plan. *Id*. The primary points of

contention were that the request for proposals process did not include interviews with grant applicants and that ResCare allegedly performed worse than other applicants that the ad hoc selection panel did not recommend for funding. *Id*. In response to those concerns, Workforce Connections continued the meeting. *Id*.

On April 2, 2019, the programs committee reconvened. *Id*. Two weeks in advance of that meeting, Nevada Partners submitted a written request to Cruz asking for notice. *Id*. Workforce Connections failed to provide a copy of notice to Nevada Partners and did not post public notice by March 29, 2019. *Id*. The committee ultimately approved the ad hoc selection panel's recommendation. *Id*. On May 9, 2019, Workforce Connections' board of directors held an open meeting where it followed the ad hoc selection panel's recommendation and awarded $10,000,000 to ResCare. *Id*.

On May 3, 2019, Nevada Partners initiated this action, asserting eight causes of action: (1) violation of procedural due process; (2) violation of substantive due process; (3) violation of equal protection; (4) violation of Nevada's open meeting law, NRS 241.020; (5) violation of WIOA's competitive process requirement, 29 U.S.C. § 3122 *et seq.*; (6) violation of WIOA's performance accountability measures requirement, 29 U.S.C. § 3141 *et seq.*; (7) violation of WIOA's conflict of interest provision, 29 U.S.C. § 3122(h) *et seq.*; and (8) injunctive relief. (ECF No. 1).

Now, defendants move to dismiss all causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28).

## II. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id*. at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation.

*Id*.

### III. Discussion

Pending before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 28). Plaintiff has sued one of the individual defendants,

Cruz, in his official capacity as Workforce Connections' executive director. (ECF No. 1). Plaintiff has also asserted eight separate claims for relief. *Id*. The court will first address the viability of suit against Cruz in his official capacity and will then address the plausibility of each claim.

*a. Official capacity*

"A suit against a governmental official in his official capacity is equivalent to a suit against the governmental entity itself." *Larez v. Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). Thus, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dept.*, 533 F.3d 780, 799 (9th Cir. 2008).

Workforce Connections is Southern Nevada's designated local workforce development board, and it oversees the distribution of government funds under WIOA. (ECF No. 1). In this role, Workforce Connections operates as a local government entity. Cruz is a municipal officer in the employ of Workforce Connections. *Id*. Nevada Partners asserts all eight causes of action against both defendants and names Cruz only in his official capacity. Therefore, the court will dismiss Cruz as a redundant defendant. *See Center for Bio-Ethical Reform*, 533 F.3d at 799.

*b. Causes of action*

The court now addresses each of plaintiff's claims against the remaining defendant, Workforce Connections.

*1. Procedural due process*

To plausibly allege a procedural due process claim, a plaintiff must show "(1) a liberty or property interest protected by the constitution; (2) a deprivation of the interest by the government; and (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

The Due Process Clause of the Fourteenth Amendment protects government benefits only if a plaintiff has a "legitimate claim of entitlement" based on "existing rules or understandings that stem from an independent source such as state law . . ." *Bd. Of Regents of State Colls. v.*

*Roth*, 408 U.S. 564, 577 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)).

Government officials used discretion when allocating the $10,000,000 in WIOA grants by using a competitive process to evaluate applicants. (ECF No. 1); *see also* 29 U.S.C. § 3122(d)(10)(B)(i). The complaint incorporates by reference Workforce Connections' four-year plan, which sets out the procedure that Workforce Connections must follow. (ECF No. 1). The plan requires Workforce Connections to announce a new request for proposals and conduct a bidder's conference where Workforce Connections must answer questions from applicants. (ECF No. 24-46).[1] All proposals that applicants eventually submit are screened at an initial technical review. *Id*. Then, a third party evaluates and ranks the proposals. *Id*. Workforce Connections then uses the information from the technical review and third-party evaluations to recommend grant awards, which the programs committee and board must approve. *Id*.

The steps in Workforce Connections' competitive process require a global analysis of proposals to determine which applicant is best suited for WIOA grants. These circumstances preclude any "reasonable expectation of entitlement" because the request for proposals process is not based on statutes or rules "couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994) (quotes and citations omitted); *see also* 29 U.S.C. §§ § 3122(d)(10)(B)(i), 3123(16). Thus, as is the case with most applicants for government contracts, Nevada Partners does not have a constitutionally protected property interest in the WIOA grants.[2]

Accordingly, the court will dismiss with prejudice Nevada Partners' procedural due process claim.

---

[1] Nevada Partners has filed with the court Workforce Connections' four-year plan, which the court relies on in determining whether Nevada Partners has pleaded a plausible procedural due process claim.

[2] Nevada Partners alleges that Workforce Connections has previously awarded Nevada Partners millions of dollars in WIOA grants. However, the "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate clam of entitlement." *Doran v. Houle*, 721 F.2d 1182, 1186 (9th Cir. 1983).

*2. Substantive due process*

Although the analysis of a procedural due process claim differs from the analysis of a substantive due process claim, both causes of action require plaintiff to show a liberty or property interest that the Fourteenth Amendment protects. *Oceanside Gold Institute, Inc. v. City of Oceanside*, 876 F.2d 897 (9th Cir. 1989). Because Nevada Partners does not have a protected property interest in WIOA grants, the court will also dismiss with prejudice Nevada Partners' substantive due process claim.

*3. Equal protection*

In evaluating Nevada Partners' equal protection claim, the court must first determine the applicable level of scrutiny. *Aleman v. Glickman*, 217 F.3d 1191, 1195 (9th Cir. 2000). According to the allegations in the complaint, Workforce Connections did not engage in class-based discrimination. (ECF No. 1). Instead, it singled out Nevada Partners for disfavored treatment relative to similarly situated applicants. *Id*. Thus, Nevada Partners is asserting a "class of one" claim, and rational basis applies. *See Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1022 (9th Cir. 2011).

To state a "class of one" claim, Nevada Partners must show that Workforce Connections "(1) intentionally (2) treated [Nevada Partners] differently than other similarly situated [grant applicants], (3) without rational basis." *Gerhart*, 637 F.3d at 1022 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "[T]he rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government action." *Id*. at 1023 (citing *SeaRiver Maritime Financial Holdings Inc. v. Mineta*, 309 F.3d 662 (9th Cir. 2002).

Nevada Partners primarily alleges that Workforce Connections violated the Equal Protection Clause because Workforce Connections did not have a rational basis to eliminate the past performance evaluation factor and institute a "cash match" requirement. (ECF No. 1). Nevada Partners also alleges that Workforce Connections conducted its intensive on-site WIOA monitoring process in a manner that made the request for proposals process more difficult for it than for other grant applicants. *Id*.

In viewing the factual allegations in the complaint as true, Workforce Connections' alleged elimination of the past performance requirement disproportionately benefited Rescare, who had a history of past reprimands, to the detriment of Nevada Partners. *Id*. Workforce Connections' institution of the "cash match" requirement purportedly limited Nevada Partners' ability to apply for the full amount of grant funding but did not similarly limit Rescare's ability to apply. *Id*. Workforce Connections also allegedly made the on-site WIOA monitoring process more difficult for Nevada Partners than other similar organizations applying for WIOA grants. *Id*. Workforce Connections purportedly made Nevada Partners undergo an on-site monitoring review during the days before, and immediately up to, the deadline to submit grant applications, and did not conduct other on-site monitoring reviews for any other grant applicants in the days before the submission deadline. *Id*.

These allegations are sufficient to plausibly state that Workforce Connections did not have a rational basis for treating Nevada Partners differently. Therefore, the court will allow Nevada Partners to proceed on its equal protection claim.

*4. Open meeting law*

Nevada open meeting law requires public organizations to provide written notice three days before holding an open meeting. Nev. Rev. Stat. § 241.020(1)-(2). Public organizations are also required to provide a copy of such notice to persons who have requested it. Nev. Rev. Stat. § 241.020(3)(c). Any violation of Nevada open meeting law renders the actions taken at the respective meeting void. Nev. Rev. Stat. § 241.036; *Chanos v. Nevada Tax Com'n*, 181 P.3d 675, 683 (Nev. 2008).

On April 2, 2019, the programs committee approved the ad-hoc selection panel's recommendation at an open meeting. (ECF No. 1). Two weeks in advance of that meeting, Nevada Partners allegedly submitted a written request to Cruz asking for notice. *Id*. Workforce Connections purportedly failed to provide a copy of notice to Nevada Partners and did not post public notice by March 29, 2019. *Id*. These allegations are sufficient to state a plausible claim that Workforce Connections violated NRS 241.020 and that the actions at the April 2, 2019,

meeting are void. Therefore, the court will allow Nevada Partners to proceed on its open meeting law claim.

*5. WIOA's competitive process requirement*

WIOA requires local boards to award grants on a competitive basis. 29 U.S.C. § 3122(d)(10)(B)(i). In furtherance of this requirement, Workforce Connections developed a four-year plan that established the procedure it would follow in distributing grants. (*See* ECF No. 1). The plan also stated that Workforce Connections would follow the procedure "in a manner that provides, to the maximum extent practical, free and open competition to all interested parties." *Id*.

Nevada Partners alleges that Workforce Connections mismanaged its grant distribution procedure by removing past performance as a factor for evaluation and adding the "cash match" requirement. *Id*. Specifically, Nevada Partners alleges that the removal of past performance unfairly favored ResCare because it had several reprimands for violating performance accountability measures. *Id*. The "cash match" requirement also allegedly placed Nevada Partners at a disadvantage as it limited its ability to apply for the full amount of WIOA grants available. *Id*.

Viewing these allegations as true, Nevada Partners has stated a plausible claim that Workforce Connections' actions harmed free and open competition in violation of § 3122(d)(10)(B)(i). Thus, the court will allow Nevada Partners to proceed on its WIOA competitive process claim.

*6. WIOA's performance accountability measures requirement*

WIOA establishes performance accountability measures that local boards use to assess the effectiveness of an applicant's program. 29 U.S.C. § 3141(a). The relevant provisions of the statute list several indicators of performance which focus on participants' unsubsidized employment, education, and earnings after leaving a program. 29 U.S.C. § 3141(b)(2).

According to the complaint, Workforce Connections removed past performance evaluations from the request for proposals process. (ECF No. 1). Nevada Partners further alleges that Workforce Connections did not implement any new procedure to evaluate the

performance of grant applicants. *Id.* Under these purported circumstances, Workforce Connections violated WIOA's requirement that grant distributors consider past performance. *See* 29 U.S.C. § 3141(a). Thus, Nevada Partners may proceed on this claim, as it has plausibly alleged a violation of WIOA's performance accountability measures requirement.

### 7. *WIOA's conflict of interest provision*

WIOA's conflict of interest provision provides that a member of a local board or standing committee cannot:

> (1) vote on a matter under consideration by the local board—
>     (A) regarding the provision of services by such member (or by an entity that such member represents); or
>     (B) that would provide direct financial benefit to such member or the immediate family of such member; or
> (2) engage in any other activity determined by the Governor to constitute a conflict of interest as specified in the State plan.

29 U.S.C. § 3122(h).

Nevada Partners alleges that several individuals from Workforce Connections had conflicts of interest and did not abstain from participating in the request for proposals process. (ECF No. 1). These individuals include John Martin, Peter Guzman, Louis Loupias, Lou DeSalvio, and Marvin Gebers. *Id.*

Martin, Loupias, DeSalvio, and Gebers purportedly voted on matters regarding the grant distribution process while holding leadership positions in various organizations that provided workforce services. *Id.* However, Nevada Partners does not allege any details explaining how those individuals or organizations had a substantive interest in Workforce Connections' allocation of grants. *See generally id.* As for Guzman, Nevada Partners merely alleges that Guzman admitted, without providing any explanation, to having a conflict of interest. *Id.* Because these allegations do not provide sufficient detail to state a conflict of interest claim that is plausible on its face, the court will dismiss without prejudice Nevada Partners' conflict of interest claim.

### 8. *Injunctive relief*

The court will dismiss Nevada Partners' eighth cause of action because injunctive relief standing alone is not an actionable claim. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't*

*Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346-JCM-RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010). This dismissal does not preclude the court from awarding injunctive relief in the event that Nevada Partners proves the necessary facts for the court to issue an injunction.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 28) be, and the same hereby is, GRANTED as to claims one and two, and those claims are DISMISSED with prejudice.

IT IS FURTHER ORDERED that defendants' motion to dismiss (ECF No. 28) be, and the same hereby is, GRANTED as to claim seven, and that claim is DISMISSED without prejudice.

IT IS FURTHER ORDERED that defendants' motion to dismiss (ECF No. 28) be, and the same hereby is, DENIED as to claims three, four, five, and six.

IT IS FURTHER ORDERED that Jaime Cruz be, and the same hereby is, DISMISSED as a defendant to this action.

DATED August 21, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 11 -